UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WILLIAM FLETCHER,<br><br>                    Plaintiff,<br><br>        vs.<br><br>CORIZON HEALTH SERVICES;<br>MICHAEL BLURTON; BOBETTE<br>WHITING; and ANDREW<br>THUERNAGLE,<br><br>                    Defendants. | Case No. 1:14-cv-00532-BLW<br><br>**MEMORANDUM DECISION AND<br>ORDER** |

## INTRODUCTION

The Court has before it defendants' motion for partial summary judgment and plaintiff's motion to amend his complaint. The motions are fully briefed and at issue. For the reasons explained below, the Court will deny the motion to amend and grant the motion for partial summary judgment.

## BACKGROUND

Plaintiff William Fletcher is an inmate incarcerated at the Idaho State Correctional Institution operated by the Idaho Department of Correction (IDOC). His lawsuit claims he received inadequate dental care while incarcerated. By making him wait four weeks for dental care and then extracting his teeth in lieu of alternative procedures, Fletcher contends defendants were negligent, committed medical malpractice, and provided

constitutionally inadequate dental care.  His lawsuit contains a § 1983 claim and various state law claims.

Defendants respond by seeking summary judgment on Fletcher's constitutional claim, arguing that Fletcher did not exhaust his administrative remedies.  Because this motion only seeks to dismiss the § 1983 claim, the Court will treat it as a motion for partial summary judgment.  Fletcher, in turn, has filed a motion to amend his complaint, which the Court will resolve first.

## ANALYSIS

### Fletcher's Motion to Amend Complaint

Fletcher seeks to amend his complaint with new claims against new parties arising from events unrelated to defendants' dental care.  The Court previously declined to permit Fletcher to make a similar amendment.  *See Initial Review Order (Dkt. No. 12)* at p. 5-6.  The same reasoning applies to the present motion and it will therefore be denied.

### Defendants' Motion for Partial Summary Judgment

Excluding "the rare event that a failure to exhaust is clear on the face of the complaint," summary judgment is the proper procedural vehicle to raise the affirmative defense of exhaustion.  *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014).  Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See* Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims . . . ."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but instead is the

"principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The Court must view the evidence in the light most favorable to the non-moving party and must not make credibility findings. *Id.* at 255. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence, like affidavits or deposition excerpts, but may simply point out the absence of evidence to support the non-moving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000). The burden then shifts to the non-moving party to produce evidence sufficient to support a jury verdict in his favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and, by "affidavits, or by the depositions, answers to interrogatories, or admissions on file," point to the existence of a genuine issue of material fact. *Celotex*, 477 U.S. at 324.

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . until such administrative remedies as are available are exhausted." *See* 42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted

claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).

Exhaustion is intended to give "prison officials an opportunity to resolve disputes

concerning the exercise of their responsibilities before being haled into court." *Id.* at 204.

By its plain terms, however, the PLRA requires prisoners to exhaust only those avenues

of relief that are "available" to them.  42 U.S.C. § 1997e(a).

A defendant bears the burden of proving failure to exhaust.  *See Brown v. Valoff*,

422 F.3d 926, 936 (9th Cir. 2005).  If the defendant does so, "the burden shifts to the

plaintiff to show that the administrative remedies were unavailable."  *Albino v. Baca*, 697

F.3d 1023, 1031 (9th Cir. 2012).  Confusing or contradictory information given to a

prisoner "informs [the] determination of whether relief was, as a practical matter,

'available.'"  *Brown*, 422 F.3d at 937.  Administrative remedies are deemed unavailable

if the prisoner shows the required procedural steps were "not known and unknowable

with reasonable effort."  *Albino*, 697 F.3d at 1037.  It is not enough that the prisoner was

subjectively unaware of the proper administrative procedures; exhaustion may be excused

only if that lack of awareness was also "objectively reasonable."  *Id.* at 1038.

Here, the IDOC has set up a three step process for inmates to pursue grievances

concerning their treatment at the jail.  The inmate must first file an Offender Concern

Form (OCF).  *Hallum Affidavit (Dkt. No. 21-3)* at ¶ 5.  If the OCF does not resolve the

matter, the inmate may file a grievance form within 30 days of the incident giving rise to

the grievance.  *Id.* ¶ 6.  Finally, IDOC's decision on the grievance may be appealed.  *Id.* ¶

8.

MEMORANDUM DECISION AND ORDER - 4

Although Fletcher filed OCFs, he never initiated the grievance procedure. Nevertheless, Fletcher argues he exhausted his administrative remedies because the Warden provided a satisfactory response to one of Fletcher's OCFs, indicating that dental care would be provided.  But according to Fletcher's own allegations, the delays continued for weeks after the Warden's statement.  *See Fletcher Brief (Dkt. No. 25)* at p. 2.  Indeed, Fletcher filed two OCF's *after* the Warden's statement.  *See OCFs (Dkt. No. 25-1).*  The facts are undisputed that the Warden's statements did not (1) stop the alleged delays, (2) affect in any manner the allegedly poor treatment Fletcher ultimately received, (3) mislead Fletcher into believing he did not need to pursue the grievance process, or (4) prevent him from using that process.  Hence the Warden's statement is irrelevant.

Fletcher has not shown IDOC's administrative remedies were unavailable to him. The undisputed evidence instead shows that Fletcher, like all prisoners, received "both written and verbal instructions regarding the grievance procedure."  *Hallum Affidavit, supra,* at ¶ 4.

One argument made by defendants does concern the Court.  The defendants argue that the grievance process is now unavailable to Fletcher because "grievance forms must be submitted within 30 days of the incident giving rise to the grievance."  *See Defense Brief (Dkt. No. 21-1)* at p. 9.  Fletcher complains of conduct from August 1, 2014 through September 2, 2014 – the grievance process was therefore available to him up to October 2, 2014, but because he failed to file a grievance by that date, "it is now too late for Plaintiff to exhaust the issues in his Complaint," according to defendants.  *Id.*

This means that if the Court dismisses Fletcher's § 1983 claim, the option he might otherwise have of completing the grievance process and – if it is not resolved – returning to Court is no longer available.  He will be forever barred from bringing his § 1983 claim.

While these circumstances would appear to give Fletcher a powerful unavailability argument, the Supreme Court has foreclosed that avenue for him.  In *Woodford v. Ngo*, 548 U.S. 81 (2006), the defendants argued that an inmate failed to exhaust the grievance process because he filed his grievance after a prison's 15-day filing policy had expired. *Id.* at 86-87.  The inmate responded that the grievance process was unavailable to him because of the prison's 15-day filing policy.  *Id.*  The Supreme Court rejected that argument and found dismissal proper, explaining that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." *Id.* at 91.  Thus, as in *Woodford*, Fletcher was required to comply with IDOC's filing policy.

Because Fletcher did not exhaust his administrative remedies, the Court will grant defendants' motion for partial summary judgment.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the defendants' motion for partial summary judgment (docket no. 21) is GRANTED and the claim under 42 U.S.C. § 1983 is DISMISSED.

IT IS FURTHER ORDERED, that the plaintiff's motion to amend (entitled "Addendum") (docket no. 34) is DENIED.



DATED: April 8, 2016

B. Lynn Winmill
Chief Judge
United States District Court